## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| M.S., a minor, by and through | : | |
| her mother, PARIS HALL, and | : | No. 1:13-cv-2718 |
| PARIS HALL, individually, | : | |
|     Plaintiffs | : | |
| | : | (Judge Kane) |
|     v. | : | |
| | : | |
| SUSQUEHANNA TOWNSHIP | : | |
| SCHOOL DISTRICT, et al., | : | |
|     Defendants | : | |

## MEMORANDUM

Before the Court is Defendants' motion to dismiss Plaintiffs' complaint.  (Doc. No. 10.)

For the reasons that follow, the Court will grant in part and deny in part Defendants' motion to

dismiss.

## I.      BACKGROUND[1]

Plaintiff M.S., a female born in 1996, enrolled in the Susquehanna Township High

School (STHS) within the Susquehanna Township School District (STSD), at the beginning of

the 2012 calendar year.  (Doc. No. 1 ¶¶ 26-29, 56.)  Plaintiff, a minor during the time she

attended STHS, had a history of emotional problems, depression, and learning difficulties.  (Id.

¶¶ 37-59.)  As a result, she used an Individualized Education Program (IEP) to assist her, both at

her prior school and at STHS.  (Id.)

On or about January 22, 2013, STSD hired Defendant Shawn A. Sharkey to serve as an

assistant principal at STHS.  (Id. ¶ 73.)  Plaintiffs allege that Sharkey's criminal history

---

[1] The following background is taken from the allegations of Plaintiffs complaint (Doc.
No. 1).

information is freely accessible on the Pennsylvania Unified Judicial System website, and that

they do not know whether STSD conducted this search.  (Id. ¶¶ 68-71.)  On May 7, 1990,

Sharkey was arrested and charged with inducing a minor to purchase alcohol, in violation of 18

Pa. C.S.A. § 6310(A).  (Id. ¶ 66.)  He subsequently pled guilty to a disorderly persons offense.

(Id. ¶ 67.)

On January 28, 2013, Sharkey removed Plaintiff M.S. from class to discuss an incident in

which she had been bullied by other students.  (Doc. No. 1 ¶¶ 76-79.)  Along with Defendant

Amanda Salter, M.S.'s IEP case manager, they discussed her anxieties and problems with

bullying.  (Id.)  A few days later, on February 1, 2013, Sharkey encountered M.S. in the school

nurse's office.  (Id. ¶¶ 86-89.)  He provided her with his phone number and, later that day, sent a

text message to M.S.  (Id. ¶¶ 91-95.)  That night, Sharkey picked up M.S. at her home and drove

her to his hotel room, where they had sexual intercourse.  (Id. ¶¶ 101-105.)

Plaintiffs allege that during February and March 2013, Sharkey and M.S. engaged in

sexual acts "approximately ten (10) times."[2]  (Doc. No. 1 ¶ 116.)  During that time, Sharkey

"pulled M.S. out of class" at least four different times in order to talk to her in private in his

office.  (Id. ¶¶ 122-26.)  When this occurred, Plaintiffs allege that students rolled their eyes and

made noises.  (Id. ¶¶ 131-32.)  Plaintiffs also assert that students accused M.S. of having a sexual

relationship with Sharkey, and called her names such as "whore" and "home-wrecker."  (Id. ¶¶

141-45.)  Plaintiffs assert that teachers, STHS office staff, and the other assistant principals knew

that M.S. was being called into his office an inordinate amount of times; implicit in these

allegations is that suspicions should have been raised.  (Id. ¶¶ 133-37.)   Plaintiffs further allege

---

[2]  Plaintiff does not aver that any sexual relationship continued beyond March 2013.

that "teachers at STHS became aware that students were making vulgar statements and slurs about and to M.S." (Id. ¶ 148.)

In April 2013, a teacher reported to STSD Administrators that Sharkey and M.S. had a sexual relationship. (Doc. No. 1 ¶ 149.)  In response, Defendant Assistant Principal Kristi Kauffman, along with Sharkey, pulled M.S. and five other female students out of class to discuss the rumors and statements. (Id. ¶ 154.)  M.S. denied that she was having a sexual relationship with Sharkey, and all five girls denied making any such statements. (Id. ¶¶ 160-61.)  Following the meeting, M.S. deleted all text messages and phone calls from Sharkey, as well as his contact information, from her phone. (Id. ¶ 171.)  Later that day, M.S. individually spoke to Defendants Superintendent Susan Kegerise and Assistant Superintendent Cathy Taschner about the rumors. (Id. ¶ 175.)  Kegerise and Taschner also brought back the other five girls for questioning. (Id. ¶ 189.)  Plaintiffs allege that Kegerise and Taschner failed to properly interrogate M.S., and also failed to check the deleted files folder during their search of her phone. (Id. ¶¶ 178-87.)  Following this investigation, the STSD administration ultimately "concluded that Sharkey was not having an inappropriate relationship with M.S.," and continued to employ Sharkey as an assistant principal. (Id. ¶ 191.)

Plaintiffs allege that in the weeks that followed, other students continued to harass and call M.S. names. (Doc. No. 1 ¶ 210.)  Additionally, Plaintiffs aver that Defendant special education teacher Amanda Salter, Larry Nawa and Kenneth Potter "harassed M.S. and made illicit comments and called M.S. illicit names." (Id. ¶¶ 214-216.)  Plaintiff further alleges that during this time "at least four teachers reported to STSD administrators that something inappropriate was happening" between M.S. and Sharkey. (Id. ¶¶ 223-24.)  After summer break,

at the beginning of the 2013 school year, a student reported the relationship to a STSD resource officer, who forwarded the information to the Susquehanna Township Police Department.  (Id. ¶¶ 237-38.)  Following a brief investigation, on September 20, 2013, the police department issued an arrest warrant for Sharkey.  (Id. ¶¶ 242-43.)  He was charged with violations of 18 Pa. C.S.A. 3124.2(A)(21) - Intercourse/Sexual Contact with Student; 18 Pa. C.S.A. § 6301 (A)(1)(II) - Corruption of Minors - Defendant Age 18 or Above; and 18 Pa. C.S.A. § 6318 (A)(1) - Unlawful Contact With Minor - Sexual Offenses.  (Id. ¶ 244.)  Following the arrest, Plaintiffs assert that M.S. continued to be harassed by other students, and she eventually transferred to another school district.  (Id. ¶¶ 251-53.)

On November 5, 2013, Plaintiffs filed a complaint against Defendants Susquehanna Township School District, and against Shawn A. Sharkey, Kristi Kauffman, Susan M. Kegerise, Cathy L. Taschner, Ralph Lovelidge, Amanda Salter, Larry Nawa, and Kenneth Potter in their individual and official capacities.  (Doc. No. 1.)  The nine-count complaint brings the following causes of action: (1) a Section 1983 claim against Sharkey for violation of personal security and bodily integrity in violation of the Fourteenth Amendment to the United States Constitution; (2) a Section 1983 claim against STSD, Kegerise and Taschner for "deliberate indifference, custom and practices" in violation of the Fourteenth Amendment; (3) a Section 1983 claim against STSD, Kegerise, Taschner and Lovelidge for "negligent hiring, training, supervision and retention" in violation of the Fourteenth Amendment; (4) a claim against STSD for a hostile educational environment in violation of Title IX, 20 U.S.C. § 1681 et seq.; (5) a claim against all Defendants under Pennsylvania law for intentional infliction of emotional distress; (6) a claim against all Defendants under Pennsylvania law for negligence per se; (7) a claim against Sharkey

under Pennsylvania law for battery; (8) a claim against STSD, Kegerise and Lovelidge under

Pennsylvania law for negligent hiring, and (9) a claim against all Defendants for punitive

damages.  (Id.)

Counts One and Seven of the complaint are alleged solely against Defendant Sharkey.

Sharkey is not a party to the motion to dismiss, and default was entered against him on February

19, 2014, for failure to defend this action.  (Doc. No. 21.)

On January 6, 2014, Defendants STSD, Kauffman, Tegerise, Taschner, Lovelidge, Salter,

Nawa, and Potter filed a motion to dismiss all claims raised against them.  (Doc. No. 10.)  The

motion is fully briefed and ripe for disposition.

## II.    LEGAL STANDARD

Federal notice and pleading rules require the complaint to provide the defendant notice of

the claim and the grounds upon which it rests.  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232

(3d Cir. 2008).  The plaintiff must present facts that, if true, demonstrate a plausible right to

relief.  Fed. R. Civ. P. 8(a).  Although Federal Rule of Civil Procedure 8(a)(2) requires "only a

short and plain statement of the claim showing that the pleader is entitled to relief," a complaint

may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to

state a claim upon which relief can be granted."  See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all

factual allegations in the complaint and all reasonable inferences that can be drawn therefrom,

and view them in the light most favorable to the plaintiff.  See In re Ins. Brokerage Antitrust

Litig., 618 F.3d 300, 314 (3d Cir. 2010).  The Court's inquiry is guided by recent developments

in pleading standards, which commenced with the United States Supreme Court's announcement

of the "plausibility" standard in <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544 (2007).  <u>See also</u>

<u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009).  Under <u>Twombly</u> and <u>Iqbal</u>, pleading requirements have

shifted from simple notice pleading under <u>Conley</u>'s "no set of facts" standard to a "more

heightened form of pleading."  <u>See</u> <u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 210 (3d Cir.

2009).  Now, to prevent dismissal, all civil complaints must set out "sufficient factual matter" to

show that the claim is facially plausible.  <u>Id.</u>  Accordingly, to determine the sufficiency of a

complaint under <u>Twombly</u> and <u>Iqbal</u>, the United States Court of Appeals for the Third Circuit

has identified the following steps a district court must take when determining the sufficiency of a

complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim;

(2) identify any conclusory allegations contained in the complaint "not entitled" to the

assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained

in the complaint "plausibly give rise to an entitlement for relief."  <u>See</u> <u>Santiago v. Warminster

Tp.</u>, 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

## III.    DISCUSSION

Plaintiffs' causes of action arise under 42 U.S.C. § 1983, Title IX, 20 U.S.C. § 1681 <u>et

seq</u>., and Pennsylvania common law.  Defendants move to dismiss all counts against them

pursuant to Federal Rule of Civil Procedure 12(b)(6), asserting that Plaintiffs have failed to state

a claim for which relief can be granted.  (Doc. No. 10.)  The Court will first address Plaintiffs'

claims against the individually-named Defendants in their official capacity.  The Court will next

address Plaintiffs' Section 1983 claims.  The Court will then address Plaintiffs' Title IX claims.

Lastly, the Court will address Plaintiffs' claims arising under state law.

### A.    Official capacity claims

Plaintiffs' complaint brings causes of action against the individual Defendants in both their individual and official capacities.  (Doc. No. 1.)  Defendants first move the Court to dismiss the "official capacity" claims as duplicative of the claims asserted against STSD.  (Doc. No. 14 at 20-21.)  Plaintiffs assert that because the individuals are being sued in both their individual and official capacities, the Court should not dismiss the claims.  (Doc. No. 19 at 12 n.2.)

Suits against government employees in their official capacities "generally represent another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165–66 (1985) (quoting Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 690 n.55 (1978)).  See Gregory v. Chehi, 843 F.2d 111, 120 (3d Cir. 1988) ("[T]he claims here, insofar as they are against the defendant officials in their official capacities, are only a duplication of the counts asserted against the [entity] itself.")  Accordingly, "it is a well-established practice in [the Third Circuit] to dismiss redundant § 1983 claims asserted against public officers in their official capacities where a claim has also been made against the public entity that employs them." Jankowski v. Lellock, No. 13-194, 2013 WL 5945782, at *9 n.6 (W.D. Pa. Nov. 6, 2013).  However, a court is not required to dismiss the official capacity claims; for example, some district courts in this Circuit have declined to dismiss the official capacity claims as redundant where there are also individual capacity claims against those defendants, reasoning that because the defendants must also answer the charges against them in their individual capacities, "dismissing the official capacity claims against them will serve no laudable purpose." See, e.g., Capresecco v. Jenkintown Borough, 261 F. Supp. 2d 319, 322 (E.D. Pa. 2003).  Meanwhile, other district courts have used their discretion to dismiss official capacity claims even where there are also individual capacity claims, because redundant official

capacity claims may unnecessarily clutter the docket and may confuse a jury.  See, e.g., Hordych v. Borough of N. E., No. 10-16, 2010 WL 1707735, at *8 (W.D. Pa. Apr. 27, 2010).

The Court finds that dismissing the official capacity claims is warranted.  The Court is persuaded by the Third Circuit's approval of the practice of dismissing redundant official capacity claims, and finds no reason to preserve the claims here.  See Cuvo v. DiBaisi, 169 F. App'x 688, 693 (3d Cir. 2006) (affirming dismissal "against the officers in their official capacities because a lawsuit against public officers in their official capacities is functionally a suit against the public entity that employs them"); Foglesong v. Somerset Cnty., No. 12-77, 2013 WL 795064, at *9-10 (W.D. Pa. Mar. 4, 2013) (finding that dismissal of redundant official capacity claims is appropriate even where there are also individual capacity claims).  Moreover, considering the large number of Counts and Defendants named in the complaint, the Court is persuaded that retention of redundant official capacity claims would cause confusion and would unnecessarily clutter the docket.  See Moore v. City of Philadelphia, No. 14-133, 2014 WL 859322, at *3 (E.D. Pa. Mar. 5, 2014) ("Since Plaintiff's redundant claims against the moving Defendants unnecessarily clutter the docket, this Court shall exercise its discretion to dismiss the official-capacity claims against [Defendants].")  Accordingly, the Court will dismiss all Section 1983 claims against the individually-named Defendants in their official capacities.

**B.      Section 1983 Claims**

Counts Two and Three bring Section 1983 claims against STSD, and individually-named Defendants Kegerise, Taschner and Lovelidge.  The Court will first address the claims against STSD.  The Court will then address the claims against the named Defendants.

**1.      Municipal liability against STSD**

Because municipalities cannot be liable under <u>respondeat superior</u> for the torts of their employees, and thus to impose municipal liability on an entity such as STSD under Section 1983, a plaintiff must show that the alleged constitutional violation resulted from a municipal custom, practice, or policy.  <u>Monell</u>, 436 U.S. at 694.  "Policy is made when a 'decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action' issues an official proclamation, policy, or edict."  <u>McTernan v. City of York, Pa.</u>, 564 F.3d 636, 658 (3d Cir. 2009) (quoting <u>Andrews v. City of Phila.</u>, 895 F.2d 1469, 1480 (3d Cir. 1990)).  "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanently and well-settled' as to virtually constitute law."  <u>Id.</u>  <u>Monell</u> liability also requires an underlying constitutional violation.  <u>See</u> <u>Marable v. West Pottsgrove Twp.</u>, 176 F. App'x 275, 283 (3d Cir. 2006) ("[A] municipality may not incur <u>Monell</u> liability as a result of the actions of its officers when its officers have inflicted no constitutional injury.").  A plaintiff must allege that "through its deliberate conduct, the municipality was the 'moving force' behind the injury."  <u>Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown</u>, 520 U.S. 397, 404 (1997).

Defendants move to dismiss all of Plaintiffs' claims against STSD arising under Section 1983.  Plaintiffs counter that they have sufficiently alleged municipal liability based on (1) custom, practice and deliberate indifference, (2) failure to train, (3) negligent retention/failure to discipline, and (4) negligent hiring.  (Doc. No. 19 at 12-23.)  The Court will address each theory in turn.

### a.    Custom and practice/deliberate indifference

Defendants move the Court to dismiss the Section 1983 <u>Monell</u> claim against STSD in

Count Two, which alleges STSD is liable for its "deliberate indifference & custom and practice"

in violation of the Fourteenth Amendment to the United States Constitution.[3] (Doc. No. 14 at

11-22.)

Under the law of this Circuit, a governmental entity is liable for its employees' conduct

when their acts are deemed to be the result of a policy or custom of the governmental entity for

whom the employee works.  A government agency is generally accountable for an employees'

acts when: (1) an appropriate officer or entity promulgates a statement of policy and the

employee's act is an implementation of that policy; (2) the act of the policymaker violates federal

law; and (3) a policymaker fails to act affirmatively despite the obvious need for action to

control agents of the government.  Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3d

Cir. 2003).  Plaintiffs allege that STSD is liable under the third scenario: that policymakers

Kegerise and Taschner failed to intervene in the relationship between M.S. and Sharkey. (See

Doc. No. 10 at 13-14.).

To state a claim on a "failure to intervene" theory, a plaintiff must allege that the

municipality's conduct amounts to "deliberate indifference," and that the indifference caused the

injury.  See Black by Black v. Ind. Area Sch. Dist., 985 F.2d 707, 712 (3d Cir. 1993).  "A

---

[3] In support of their Monell claim, Plaintiffs identify generally the following alleged policies and/or customs of STSD in their complaint: (1) a "policy, practice and culture which tolerates teachers, staff, and administrators having inappropriate relationships with students" (id. ¶152); (2) a "practice and custom of not adequately investigating nor disciplining obvious sexual harassment" (id. ¶ 231); (3) "customs and policies which fail to adequately supervise and train its employees with regard to protecting students from violations of their right to personal security and bodily integrity" (id. ¶ 278); (4) "unconstitutional customs concerning its investigation of STSD's employee's tortious misconduct against STSD students" (id. ¶ 279).  The gravamen of Plaintiffs' allegations is that these policies and customs resulted in STSD employees inadequately investigating and failing to take affirmative action despite an obvious need to do so. (Doc. No. 19 at 13-14.)

showing of simple or even heightened negligence will not suffice." Brown, 520 U.S. at 407

(internal citations omitted).  Stated another way, "[a] plaintiff need not show that a given harm

was the direct result of a formal decisionmaking process;" rather, a plaintiff must demonstrate

that "policymakers were aware of similar unlawful conduct in the past, but failed to take

precautions against future violations, and that this failure, at least in part, led to [the] injury."

Turner v. City of Phila., 22 F. Supp. 2d 434, 437 (E.D. Pa. 1998) (quoting Bielevicz v. Dubinon,

915 F.2d 845, 851 (3d Cir. 1990)).  Generally, a municipal liability claim will survive a motion

to dismiss only if it "allege[s] conduct by a municipal decisionmaker."  McTernan, 564 F.3d at 658.

 Although failure-to-act claims raise difficult issues of proof because they are "a step

removed from the constitutional violation resulting from that failure," see Jankowski,  2013 WL

5945782, at *7, Plaintiffs adequately allege an underlying constitutional violation: violations of

M.S.'s personal security and bodily integrity in violation of the Fourteenth Amendment by virtue

of her sexual relationship with Sharkey, a public employee.  (Doc. No. 1 ¶¶ 273-76, 294.)

Plaintiffs must allege facts to support their claim that a policymaker had knowledge of

and exhibited deliberate indifference in the face of a known threat or high likelihood of injury to

M.S., as required to establish Monell liability under a policy or custom theory.  Additionally,

Plaintiffs must allege that a policymaker was aware of the constitutionally violative sexual

relationship while the relationship was ongoing.[4]  See Johnson v. Elk Lake Sch. Dist., 283 F.3d

---

[4]  For the Court to find that the alleged policy is the "moving force" behind the
constitutional violation, the action forming the basis of liability must occur prior to the
constitutional violation.  See, e.g., Whiting v. Bonazza, No. 09-1113, 2012 WL 269641, at *7
(W.D. Pa. Jan. 30, 2012) (granting motion to dismiss Monell claim when "nearly all of plaintiff's
factual allegations . . . occur[ed] after her alleged injury").  Plaintiff avers that the
constitutionally violative sexual relationship between M.S. and Sharkey took place in February
and March 2013.  (Doc. No. 1 ¶ 116.)  Plaintiff does not allege that any sexual relationship

138, 144 (3d Cir. 2002) (finding that absent a showing that "school officials knew of the alleged

risk of sexual abuse posed by [Defendant abuser] at a time at which they could have prevented

[the student's] alleged injuries," a plaintiff cannot establish "that her injuries were caused by a

policy or custom of the Administration").   Although Plaintiffs argue in their brief that

Defendants were "aware of Sharkey's illicit relationship," and that the "relationship was so

offensive, regular and pervasively known" by students, teachers and staff that it could not have

gone unnoticed by policymakers, the complaint does not adequately allege such knowledge prior

to April 2013 or provide adequate factual support for these conclusions.  (See Doc. No. 19 at 9,

12.)  Rather, the only specific factual averments in support of the allegation that any Defendants

had knowledge of the constitutional violations prior to their cessation are: (1) the awareness of

unnamed teachers, "STHS office staff," and assistant principals that M.S. was called to

Sharkey's office an "inordinate amount of times," which Plaintiffs identify as "at least four

separate occasions," and (2) the awareness of unnamed teachers regarding students' "vulgar

statements and slurs about and to M.S."  (Id. ¶¶ 122-26, 133-37, 144-48.)  None of these

averments specifically attribute any knowledge of the relationship to the alleged policymakers,

Superintendent Taschner and Assistant Superintendent Kegerise, neither of whom is alleged to

work out of the STHS office.   Knowledge by a policymaker[5] of the threat is generally a

---

continued after March 2013, and does not allege that anyone reported the relationship to STSD
Administrators until April 2013.  (Id. ¶ 149.)  Accordingly, the Court is restricted to Plaintiffs'
allegations regarding the alleged policymakers' behavior prior to the end of March 2013.

[5]  Because the Court finds that Plaintiffs have failed to allege sufficient facts in support of
the Monell claim, the Court declines to address at this time Defendants' alternative argument
that Superintendent Kegerise and Assistant Superintendent Taschner do not qualify as
policymakers.

prerequisite to liability under <u>Monell</u>, and the complaint is wholly insufficient in this regard.  <u>See</u> <u>Washington v. City of Phila.</u>, No. 11-3275, 2012 WL 85480, at *8 (E.D. Pa. Jan. 11, 2012) (granting motion to dismiss where plaintiff "fail[ed] to allege any fact to suggest a municipal decisionmaker's personal knowledge of the constitutionally violative conduct alleged here").

   Moreover, even if Plaintiffs adequately pled that alleged policymakers Kegerise and Taschner had knowledge prior to the end of the sexual relationship of the rumors and of the meetings in Sharkey's office, these allegations do not reveal deliberate indifference on the part of the policymakers.  <u>See</u> <u>Johnson</u>, 283 F.3d at 144 ("In the absence of any direct complaints made to school officials, the mere floating around of unsubstantiated rumors regarding a particular employee – particularly in the high school setting, which is notoriously rife with adolescent gossip – does not constitute the kind of notice for which a school district can be held liable under <u>Monell</u>'s 'policy or custom' requirement."); <u>Douglas</u>, 836 F.Supp.2d at 363 (finding defendants' knowledge that plaintiff frequently entered building together with defendant teacher insufficient to establish deliberate indifference to a sexual relationship between the two "in light of the many innocuous reasons why a student" might do so).  By failing to adequately allege that any policymakers had knowledge of the sexual relationship while it was ongoing, Plaintiffs also have not adequately pled that any alleged custom or policy was the <u>source</u> of M.S.'s injury.  <u>See</u> <u>Johnson</u>, 283 F.3d at 144.

   Plaintiffs argue they have established a custom of deliberate indifference and that Taschner and Kegerise were aware of the risk of harm to M.S. because STSD was sued three years ago for deliberate indifference arising out of a sexual relationship at a different school within the District.  (Doc. No. 1 ¶¶ 150-51; Doc. No. 19 at 11-12.)   The Court finds this

argument unavailing.  It is true that a causal connection can be established by alleging "that policymakers were aware of similar conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury."  See Turner, 22 F. Supp. 2d at 437.  However, there must be a reasonable nexus between the violations to establish causation, and here, in addition to having occurred three years earlier, Plaintiffs do not allege that these earlier accusations involved any of the same actors, that Taschner and Kegerise were employees at the time of the earlier incident, or what, if any, knowledge and awareness Taschner and Kegerise may have had regarding the earlier incident.  See Palmer v. Marion Cnty., 327 F.3d 588, 596 (7th Cir. 2003) (finding that "knowledge of two incidents of misconduct by correctional officers in a period of one year certainly fails to meet the test of a widespread unconstitutional practice by the jail's staff that is so well settled that it constitutes a custom or usage").  Accordingly, the Court finds that the earlier suit is far too attenuated and the allegations far too imprecise to plausibly place these alleged policymakers, Taschner and Kegerise, on notice that "the need to take some action to control [Sharkey] [was] so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need."  See Natale, 318 F.3d at 584.

It is true that unconstitutional "[p]ractices 'so permanent and well settled' as to have 'the force of law' are ascribable to municipal decisionmakers" and may state a claim for relief without the need for evidence identifying a specific policymaker.  See Hailey v. City of Camden, 631 F. Supp. 2d 528, 541-42 (D.N.J. 2009) (quoting Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990)).  However, the Court finds allegations of a single three year old lawsuit involving

other actors insufficient to place these policymakers on notice or to establish a widespread

custom with "the force of law." See, e.g., Cornfield by Lewis v. Consolidated High Sch. Dist.

No. 230, 991 F.2d 1316, 1327 (7th Cir. 1993) ("[T]wo reported incidents of strip searching at

[defendant high school] ... fall short of a pattern of violations sufficient to put the school board

on notice of potential harm to students."); Peters v. Cmty. Educ. Ctrs, Inc., No. 11-850, 2014 WL

981557, at *7 (E.D. Pa. Mar. 13, 2014) ("[T]wo instances of inappropriate conduct do not

establish a custom under Monell.")

    Plaintiffs also allege that Defendants inadequately investigated and responded to the

matter following a report of the sexual relationship sometime in April 2013.  (See Doc. No. 1 ¶¶

175-90.)  However, Plaintiffs do not allege that the specific constitutional violation for which

Section 1983 liability may attach – in this case, acts of sexual intercourse between M.S. and

Sharkey – continued beyond March 2013, and the earliest factual averment that supports the

allegations that a policymaker had awareness of the allegations regarding M.S. is a report made

in April 2013.  (Id. ¶ 149.)  Accordingly, none of Plaintiffs' allegations concerning behavior

following the April report support Plaintiffs' allegations that a policy or custom caused M.S.'s

constitutional harm, because the constitutional harm had already taken place.  See Douglas, 836

F. Supp. 2d at 354-55 ("Since K.E.'s constitutional rights were not violated after [defendant]

learned of the illicit sexual relationship, [plaintiff] cannot show that [defendant's] actions or

inactions caused [plaintiff's teacher] to infringe those rights."); Blue v. D.C., 850 F. Supp. 2d 16,

28 (D.D.C. 2012) (granting motion to dismiss and holding that "as Plaintiff's alleged harm in this

case is her sexual relationship with [Defendant teacher], a District decision made only after that

harm occurred cannot be said to be the 'moving force' behind her injury").  Conduct occurring

<u>after</u> the underlying constitutional violation has ended does not support <u>Monell</u> liability.  <u>See</u> <u>Connick v. Thompson</u>, 131 S. Ct. 1350, 1360 (2011) (noting that contemporaneous or subsequent conduct cannot establish a pattern of violations that would provide "notice to the cit[y] and the opportunity to conform to constitutional dictates").

Because Plaintiffs have not alleged a policymaker was deliberately indifferent to a known likelihood that Shawn Sharkey would violate M.S.'s constitutional rights, and that this indifference caused the violation, Plaintiffs' <u>Monell</u> claim will be dismissed without prejudice to the extent it rests on a policy and custom theory.  The Court advises that Plaintiffs may file an amended complaint and plead additional facts in support of their argument that policymakers had actual knowledge of the threat.

### b.      Failure to train

Defendants move the Court to dismiss Count Three to the extent it asserts a <u>Monell</u> claim against STSD on a "failure to train" theory.  (Doc. No. 14 at 33.)  "Establishing municipal liability on a failure to train claim under § 1983 is difficult."  <u>Reitz v. Cnty. of Bucks</u>, 125 F.3d 139, 145 (3d Cir. 1997)   A plaintiff must "identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred.  <u>Id.</u>  To establish liability for failure to train, a plaintiff must "show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate."  <u>Sullivan v.</u> <u>Warminster Twp.</u>, 765 F. Supp. 2d 687, 703-04 (E.D. Pa. 2011) (quoting <u>Montgomery v. De</u>

Simone, 159 F.3d 120, 127 (3d Cir. 1998).  See Berg v. Cnty. of Allegheny, 219 F.3d 261, 276

(3d Cir. 2000) ("Failure to adequately screen or train municipal employees can ordinarily be

considered deliberate indifference only where the failure has caused a pattern of violations.")

 In support of this theory, Plaintiffs allege that STSD policymakers: (1) "Failed to provide

proper and adequate training to identify obvious sexual harassment," and this failure to train

teachers and staff resulted in teachers and staff not calling law enforcement, and (2) "fail[ed] [to]

train its employees with regard to protecting students from violations of their right to personal

security and bodily integrity."  (Doc. No. 1 ¶¶ 207-08, 278.)   Plaintiff also avers that in

conducting an investigation into the allegations in April 2013, Kegerise and Taschner failed to

do what a "trained investigator" would have done.  (Id. ¶¶ 186-88.)

 Plaintiffs' failure to train claim does not state a claim for relief because, as discussed in

the previous section, Plaintiffs have failed to allege facts sufficient to charge a policymaker with

contemporaneous knowledge of Sharkey's relationship with M.S. while the alleged

constitutional violations were ongoing.  See Jankowski, 2013 WL 5945782, at *7 (citing Berg v.

Cnty. of Allegheny, 219 F.3d 261, 276 (3d Cir. 2000)) (noting that the analysis for municipal

liability based on inaction and based on a failure to train are identical).  Additionally, Plaintiffs'

allegations regarding a three-year old lawsuit arising out of a sexual encounter at a different

school in the district, a lawsuit Plaintiffs do not allege to involve any of the same actors, does not

support their failure to train theory because the nexus is too attenuated from the present

allegations to constitute a "pattern of violations" for which Monell liability can attach.  See, e.g.,

Palmer, 327 F.3d at 596.  This failure is fatal to Plaintiffs' Monell claim as set forth in the

complaint.

However, the Supreme Court has held there is a "narrow range of circumstances" in which a failure to train claim may be established without a pattern of violations.  Brown, 520 U.S. at 409.  This is only true where " in light of the duties assigned to specific officers or employees the need for more or different training is so obvious . . . that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."  City of Canton, Ohio v. Harris, 489 U.S. 378, 390 (1989).  The hypothetical example of such a situation provided in Canton is city policymakers failing to train police officers on the constitutional limitations of deadly force even though they know with a "moral certainty" that armed police officers will be required to arrest fleeing felons.  Canton, 489 U.S. at 390 n.10.  Plaintiffs do not argue that this "single-violation theory" applies, and the Court finds that it does not.  Relevant precedent makes it clear that a failure to train teachers to identify and report sexual harassment is not per se deliberate indifference.  See Kline ex rel. Arndt v. Mansfield, 255 F. App'x 624, 630 (3d Cir. 2007) ("Because not committing the crime of sexually abusing a child is obvious, the failure of [Defendant] to train its employees to spot signs of sexual abuse [is] not deliberately indifferent."); Jankowski, 2013 WL 5945782, at *7 n.5 (citing Douglas, 836 F.Supp.2d at 364) (observing that "this Court has previously expressed skepticism about whether" a claim based upon a failure to train employees to detect and report abuse "is ever cognizable under [Section] 1983").

Finally, regarding Plaintiffs' averments regarding insufficient investigative training arising out of the April investigation into the allegations, Plaintiffs' allegations concerning faulty questioning and investigations occurred after the constitutional violation had ended.  Because the allegedly flawed investigation occurred after the constitutional violation, the failure to train

18

regarding proper investigatory techniques cannot be a "moving force" behind the constitutional violation.  See, e.g., Blue, 850 F. Supp. 2d at 28.  Because Plaintiffs have not averred facts supporting an inference that a policymaker was on notice regarding a deficiency in employee training, or that this is a narrow situation in which a failure to train was per se deliberately indifferent, the failure to train Monell claim in Count Three will be dismissed without prejudice.

### c.    Negligent retention/failure to discipline

Defendants move the Court to dismiss Count Three to the extent it alleges a Monell claim against STSD under a negligent retention/failure to discipline theory.  (Doc. No. 14 at 46.) Plaintiffs' allege that Defendants' failure to discipline Sharkey or to limit his contact with M.S. prior to April 2013 is actionable.  (See Doc. No. 1 ¶ 287.)  Plaintiffs fail to state a claim under these theories for the same reason the Court found they failed to state a claim in the previous two sections; Monell liability requires deliberate indifference and knowledge by a policymaker, but Plaintiffs have not alleged sufficient facts to show that policymakers were aware of Sharkey and M.S.'s relationship while her constitutional harm was ongoing.  Thus, any failure to discipline him or terminate his employment is not the "moving force" behind the constitutional violation and cannot be imputed to the District.  See, e.g., Beers–Capitol v. Whetzel, 256 F.3d 120, 137 (3d Cir. 2001) ("[A] successful deliberate indifference claim requires showing that the defendant knew of the risk to the plaintiff before the plaintiff's injury occurred."); Johnson, 283 F.3d at 144.  Accordingly, the Court will dismiss Plaintiffs' municipal liability claim in Count Three under negligent retention and failure to discipline theories without prejudice.

### d.    Negligent hiring

Defendants also move the Court to dismiss Count Three of the complaint to the extent it

alleges a <u>Monell</u> claim against STSD under a negligent hiring theory because Plaintiffs have not

supported their <u>Monell</u> claim with factual allegations that STSD had a custom or policy of

failing to adequately investigate the background of employees.  (Doc. No. 14 at 40.)  In their

complaint, Plaintiffs allege only that STSD hired Sharkey without adequately screening his

background and, accordingly have not alleged a policy or custom of insufficient screening of

potential employees that is "so widespread as to have the force of law."  <u>See</u> <u>Blue</u>, 850 F. Supp.

2d at 26 (citing <u>Board of the County Commissioners of Bryan County v. Brown</u>, 520 U.S. 397,

403–04 (1997)).

However, in <u>Brown</u>, 520 U.S. 397, the United States Supreme Court evaluated the

potential for municipal liability based on a <u>single</u> incident of negligent hiring.  In <u>Brown</u>, the

Court "assum[ed] without deciding that proof of a single instance of inadequate screening could

ever trigger municipal liability."  <u>Id.</u>  However, in such a context, "[t]o prevent municipal

liability for a hiring decision from collapsing into <u>respondeat</u> <u>superior</u> liability, a court must

carefully test the link between the policymaker's inadequate decision and the particular injury

alleged."  <u>Id.</u>  This means that "a finding of culpability simply cannot depend on the mere

probability that any officer inadequately screened will inflict any constitutional injury.  Rather, it

must depend on a finding that <u>this</u> officer was highly likely to inflict the <u>particular</u> injury

suffered by the plaintiff.  The connection between the background of the particular applicant and

the specific constitutional violation alleged must be strong."  <u>Id.</u> at 412 (emphasis in original).

In other words, a plaintiff must demonstrate that a municipal decision reflects deliberate

indifference to the risk that a violation of a particular constitutional or statutory right will follow

the decision.  <u>Id.</u> at 411.  Deliberate indifference is a stringent standard of fault, requiring proof

that a municipal actor disregarded a known or obvious consequence of his action.  Id. at 410.

Brown addressed municipal liability based on a single incident of negligent hiring in the context of an excessive force claim against a police officer.  The officer in Brown was hired in spite of a record of assault and battery, resisting arrest and public drunkenness, a record which was available to the municipality before the officer was hired.  Id. at 413-14.  The Court explained that even though the officer may have been an "extremely poor candidate" for the job, and the municipality may have been indifferent to his record, Plaintiff must prove deliberate indifference or a disregard of a known or obvious risk.  Id. at 414.  The Court found an inadequate link between the excessive force and the applicant's background and held that the hiring decision did not violate the Constitution because it did not constitute "deliberate indifference" to the plaintiff's right to be free from a use of excessive force.  Id.  Courts that have addressed Brown have consistently interpreted it to mean that municipal liability for negligent hiring based on a single hiring decision requires the threat identified in an applicant's background to be basically identical to the harm eventually caused by the applicant.  See, e.g., Morris v. Crawford Cnty., 299 F.3d 919, 923 (8th Cir. 2002) (collecting various circuit courts of appeal cases and finding that "[t]he prior complaints in an applicant's background must be nearly identical to the type of officer misconduct that caused the constitutional deprivation allegedly suffered by a plaintiff. Courts routinely reject attempts to satisfy [Brown's] causal connection requirement where none of the prior complaints in an applicant's background were of the same or similar type of officer misconduct that caused the plaintiff's injury").

Plaintiffs' complaint fails to adequately allege a Section 1983 claim for negligent hiring arising out of the single decision to hire Sharkey.  Plaintiffs' allegations regarding Sharkey's

background do not make it "plainly obvious" that he would inflict the "particular injury

suffered," i.e., an unlawful sexual relationship with a student.   See Brown 520 U.S. at 411.

Rather, Plaintiffs allege that Sharkey pled guilty in 1990 to a disorderly conduct offense of

inducing a minor to purchase alcohol, which is not a crime of a sexual nature violating a person's

right to bodily integrity.  This is not the type of strict nexus and causation required by Brown.

See Doe v. Magoffin Cnty. Fiscal Court, 174 F. App'x 962, 968 (6th Cir. 2006) (awarding

summary judgment on negligent hiring claim because "battery of a man, even if characterized as

a crime of violence, does not make it plainly obvious that Patton would commit rape"); Barney

v. Pulsipher, 143 F.3d 1299 (10th Cir. 1998) (holding that an arrest at age 17 for possession of

alcohol did have strong casual connection to sexual assault on prison inmates).  Sustaining a

municipal liability claim for negligent hiring requires more than allegations of negligence and of

the possibility that harm will occur upon hiring.  Compare Gros v. City of Grand Prairie, 209

F.3d 431 (5th Cir. 2000) (finding that letters of reprimand, general complaints of abusiveness

during traffic stops, and aggressive statements by officer did not have close enough nexus to

sexual assault of women during traffic stops to support negligent hiring claim); R.M. v. Sainato,

No. 11-01676, 2012 WL 1623860, at *6-7 (D.N.J. May 9, 2012) (denying motion to dismiss

negligent hiring claim where the harm alleged in the applicant's background and the harm

caused were of an identical nature: sexual misconduct).

　　　　Here, the Court finds that the complaint does not satisfy Brown because Plaintiffs have

not alleged or stated facts that support a claim that the violation of M.S.'s right to bodily

integrity through a sexual relationship is the "plainly obvious consequence of the decision to

hire" Sharkey, and that the decision to hire Sharkey was made with "deliberate indifference."[6]
See Brown 520 U.S. at 411.  Accordingly, the Court must dismiss Count Three without prejudice
to the extent it alleges municipal liability based on negligent hiring.

### 2.     Section 1983 claims against Kegerise, Taschner and Lovelidge

Defendants also move to dismiss Counts Two and Three to the extent they allege claims
pursuant to Section 1983 against Kegerise, Taschner and Lovelidge in their individual capacities.
Plaintiffs argue that they have stated a claim against all three individuals under a supervisory
theory of liability.  (Doc. No. 19 at 7.)

In establishing liability against a supervisory official, a plaintiff may not base a Section
1983 action solely upon a theory of respondeat superior.  Rode v. Dellarciprete, 845 F.2d 1195,
1207 (3d Cir. 1988).  A plaintiff, however, may allege facts indicating that a supervisory official
had personal involvement in the alleged wrongs, by showing "allegations of personal direction or
of actual knowledge and acquiescence."  Id.  Allegations of actual knowledge and acquiescence
must be made "with appropriate particularity."  Id.  A supervisor's failure "properly to train,
discipline or control" can form the basis for Section 1983 liability only "if the supervisor (1)
either knew contemporaneously of the subordinate's offending behavior or knew of prior pattern
of similar incidents or circumstances and (2) acted in a manner that reasonably could be found to
communicate a message of approval to the subordinate."  Brown v. Byrd, No. 00–3118, 2000
WL 1780234, at *6 (E.D. Pa. Dec. 1, 2000) (citing Montgomery v. De Simone, 159 F.3d 120,

---

[6] "Only where adequate scrutiny of an applicant's background would lead a reasonable
policymaker to conclude that the plainly obvious consequence of the decision to hire the
applicant would be the deprivation of a third party's federally protected right can the official's
failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'"
Brown, 520 U.S. at 411.

126–27 (3d Cir. 1998)).  A plaintiff can establish supervisory liability under Section 1983 by

showing that the supervisor "had knowledge of and acquiesced in [his] subordinate['s]

violations."  <u>A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Ctr.</u>, 372 F.3d 572, 586

(3d Cir. 2004).

The Court finds that these individual capacity claims fail for the same reasons as the

municipal liability claims.  Plaintiffs have not alleged sufficient facts to indicate that Kegerise,

Taschner and Loveledge had actual knowledge of the sexual relationship while it was ongoing, or

otherwise exhibited deliberate indifference, and thereby acquiesced to the violations of M.S.'s

constitutional rights.[7]  <u>See</u> <u>Carter v. City of Philadelphia</u>, 181 F.3d 339, 356 (3d Cir.1999) (citing

<u>Sample v. Diecks</u>, 885 F.2d 1099, 1118 (3d Cir.1989)) ("[T]he standard for personal liability

under section 1983 is the same as that for municipal liability.").  Indeed, Plaintiffs' specific

factual averments regarding Defendants' actions concern the time period after the sexual

relationship had already ended.  Accordingly, the Court will dismiss these Section 1983 claims

without prejudice.  <u>See</u> <u>Rode</u>, 845 F.2d at 1207.

### C.        Title IX claims

Defendants move to dismiss Count Four of Plaintiffs' complaint, which brings a hostile

educational environment claim under Title IX, 20 U.S.C. § 1681 <u>et seq</u>. against STSD.  (Doc.

---

[7]  The Court simply cannot infer that any supervisors had knowledge on an ongoing
sexual relationship from the facts alleged in the complaint.  For example, Plaintiffs cite <u>Zion v</u>
<u>Nassan</u>, 727 F.Supp.2d 388, 407 (W.D. Pa. 2010), where the Court denied a motion to dismiss
where it found the aggressive behavior of a police officer was so "offensive and regular" that it
could not have been ignored by his supervisors. The complaint in <u>Zion</u>, however, contained
much more information tending to show knowledge, including that supervisors had received
"specific information and reports with respect to Nassan's propensity for violence."  <u>Id.</u> at 393.
Here, Plaintiffs do not allege anyone reported the relationship until April 2013, at which point
the sexual relationship had apparently ceased.  (Doc. No. 1 ¶ 149.)

No. 14 at 63.)  Title IX provides in part that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal Financial Assistance..." 20 U.S.C. § 1681(a).  Title IX provides a remedy for sexual harassment of a student and is enforceable through an implied right of action for money damages against the school district.  See Franklin v. Gwinnett Cnty. Pub. Sch., 503 U.S. 60 (1992).

 To succeed on a Title IX sexual harassment claim, a student must show: (1) quid pro quo sexual harassment, or a sexually hostile educational environment; (2) actual notice by an "appropriate person" who has the authority to take corrective measures; and, (3) a response to the harassment that amounts to deliberate indifference.  Bennett v. Pa. Hosp. Sch. of Nurse Anesthesia, No. 01-4098, 2002 WL 32341792, at *3 (E.D. Pa. Oct. 29, 2002) (citing Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 291–92 (1998)).  Plaintiffs do not allege quid pro quo sexual harassment but, rather, a sexually hostile educational environment.  To succeed on a sexually hostile environment claim, a plaintiff must demonstrate that (1) she suffered intentional discrimination because of her sex, (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected her, and (4) the discrimination would have detrimentally affected a reasonable person of her sex in her position.  Davis v. Monroe Cnty. Bd. of Educ., 526 U.S. 629, 650 (1999).  The Third Circuit has held that a school district cannot be found liable under Title IX unless notice has been provided to an "appropriate person."  Bostic v. Smyrna Sch. Dist., 418 F.3d 355, 360 (3d Cir. 2005).  An "appropriate person" is defined as someone "with the power to take action to correct the discrimination."  Id.

 The Court finds Plaintiffs have adequately alleged a hostile educational environment

claim against STSD under Title IX.  First, Plaintiffs have alleged severe and pervasive

harassment.  Plaintiffs' Title IX claim is not based solely on the sexual relationship between

M.S. and Sharkey and the continued employment of Sharkey; rather, the complaint also sets

forth specific allegations that her fellow students repeatedly called her sex and gender-based

derogatory names like "whore" and "home-wrecker." (Doc. No. 1  ¶¶ 141-46.)  Gender-based

sexual harassment by other students can support a Title IX claim.  See Davis, 526 U.S. at 650.

Plaintiff additionally avers that she was harassed and called illicit names like "slut" by teachers

at the school.  (Doc. No. 1 ¶¶ 214-16.)  Plaintiff alleges that the harassment continued after the

initial investigation and Plaintiff was eventually forced to transfer.  (Id. ¶¶ 251-53.)  Plaintiffs

thus sufficiently allege that M.S. suffered harassment that was "so severe, pervasive, and

objectively offensive that it can be said to deprive the victims of access to the educational

opportunities or benefits provided by the school."  Davis, 526 U.S. at 650.

Defendants argue that Plaintiffs have not alleged facts tending to show that an

appropriate person had actual knowledge of the sexual relationship while it was ongoing.

However, as stated above, Plaintiffs' Title IX claim is also premised on the hostile environment

M.S. encountered while attending STHS.  And unlike the allegations related to the sexual

relationship, the Complaint alleges appropriate persons were aware of this verbal harassment.

For example, Plaintiffs allege various teachers and supervisors were aware of the slurs and

name-calling and that it was reported to various officials.  (Doc. No. 1 ¶¶ 148, 154, 192.)

Plaintiffs allege that in response to these reports, officials failed to properly respond to the

allegations and merely engaged in a sham investigation, thereby allowing the harassment to

continue unabated.  (Id. ¶¶ 190-91, 210-12.)  Plaintiffs also allege that even after teachers began

reporting the relationship, the District's employees took no action to limit contact between the two, thereby continuing to expose M.S. to Sharkey.  (Id. ¶¶ 227-29.)  Because Plaintiffs have alleged facts that support the finding that Defendants were aware of M.S.'s harassment and a hostile educational environment, and their response amounted to deliberate indifference, the Court will deny Defendants' motion to dismiss Plaintiffs' Title IX claim.

**D.      State law claims**

Defendants move to dismiss all state law claims for failure to state a claim for which relief can be granted, and on the grounds that the Defendants are immune from suit pursuant to the Pennsylvania Political Subdivision Tort Claims Act ("PPSTCA").  The Court will first address STSD's liability under state law.  The Court will then address whether Plaintiffs have stated claims for negligent hiring, negligence per se, and intentional infliction of emotional distress against the individual Defendants.  Lastly, the Court will determine whether the individual Defendants are subject to immunity on those claims.

**1.      All state law claims against STSD**

Defendants move to dismiss all state claims brought against Defendant STSD on the grounds that the district is immune from such suit pursuant to the Pennsylvania Political Subdivision Tort Claims Act ("PPSTCA").  (Doc. No. 14 at 76.)  The PPSTCA provides in relevant part that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."  42 Pa. C.S.A. § 8541.  However, the PPSTCA waives sovereign immunity for certain negligent acts of an agency or its employees.  See, e.g., Young v. Pleasant Valley Sch. Dist., No. 07-854, 2008 WL 417739 (M.D. Pa. Feb. 13, 2008).   Plaintiffs do not argue that any of these

negligence exceptions apply to STSD and, in their brief in opposition, concede that STSD is immune from the state claims under the PPSTCA.  (Doc. No. 19 at 28.)  Accordingly, the Court will dismiss all state law claims as to Defendant STSD with prejudice.

### 2.    Intentional infliction of emotional distress against all Defendants

Defendants also move to dismiss Plaintiffs' intentional infliction of emotional distress (IIED) claims against the individual Defendants on the grounds that Plaintiffs have not alleged sufficiently outrageous, intentional behavior.  (Doc. No. 14 at 85.)  An IIED claim requires the following elements: (1) the conduct must be extreme and outrageous, (2) the conduct must be intentional or reckless, (3) the conduct must cause emotional distress, and (4) the emotional distress must be severe.  Hoy v. Angelone, 691 A.2d 476, 482 (Pa. Super. Ct. 1997).  It is for the court to determine, in the first instance, whether the actor's conduct can reasonably be regarded as so extreme and outrageous as to permit recovery.  Reimer v. Tien, 356 514 A.2d 566, 569 (1986). A plaintiff must also allege physical manifestations of the distress.  See Reeves v. Middletown Athletic Ass'n, 866 A.2d 1115, 1122 (Pa. Super. Ct. 2004) ("[A] plaintiff must suffer some type of resulting physical harm due to the defendant's outrageous conduct.").

Here, the complaint alleges emotional distress, but does not allege physical manifestation of that distress.  Although Plaintiffs allege M.S. suffered "physical harm" as a result of the emotional distress, such a general, non-specific averment has been found insufficient to survive motions to dismiss.  See, e.g., Abadie v. Riddle Memorial Hosp., 589 A.2d 1143, 1145-46 (Pa. Super. 1991) (dismissing IIED claim where, although Plaintiff pled that she was suffering from psychological factors affecting her physical condition, and that she would need to spend money in medical care for her injuries, she did not specifically plead the nature of those injuries); White

v. Brommer, 747 F.Supp.2d 447, 465-466 (E.D. Pa. 2010) (dismissing IIED claim for failure to

plead requisite degree of physical harm where sole averment was that plaintiff "suffered, and

continues to suffer, severe emotional distress").  Accordingly, the Court finds that Plaintiffs have

not stated a claim for intentional infliction of emotional distress and will dismiss the claim

without prejudice on this basis.

Regarding whether Plaintiffs allegations are sufficiently outrageous, because the Court

will dismiss Plaintiffs' IIED claims for a failure to allege physical harm, it will not address at

this time whether these allegations are sufficiently outrageous to state an IIED claim.  However,

because allegations of negligence or failure to act do not generally establish a claim for IIED, if

Plaintiffs choose to amend their complaint, see Jackson v. Sun Oil Co., 521 A.2d 469, 471 (Pa.

Super. Ct. 1987), Plaintiffs should supplement the complaint with any facts to support their claim

that Defendants' conduct was extreme and outrageous and which distinguish the claim in this

case.  See also Thompson v. AT&T Corp., 371 F. Supp. 2d 661, 684 (W.D. Pa. 2005) ("The fact

that the Plaintiff was ridiculed and sworn at does not equate to outrageousness for the purposes

of an intentional infliction of emotional distress cause of action."); Kazatsky v. King David

Memorial Park, Inc., 527 A.2d 988, 991 (Pa. 1987) ("[L]iability [for IIED] does not extend to

mere insults, threats, annoyances, petty oppressions, or other trivialities.").

### 3.      Negligence per se against all Defendants

Defendants move to dismiss Count Six of the complaint, which alleges negligence per se

in Defendants' failure to report Sharkey's relationship with M.S. in violation of the Child

Protective Services Act (CPSA).  (Doc. No. 14 at 88.)  The concept of negligence per se

establishes both duty and the required breach of duty where an individual violates an applicable

statute, ordinance or regulation designed to prevent a public harm.  Cabiroy v. Scipione, 767 A.2d 1078, 1079 (Pa. Super. Ct. 2001).  A plaintiff, however, having proven negligence per se, cannot recover unless it can be proven that such negligence was the proximate cause of the injury.  J.E.J. v. Tri-County Big Brothers/Big Sisters, 692 A.2d 582, 585 (Pa. Super. 1997).

Plaintiffs allege that Defendants' violation of the CPSA constitutes negligence per se. The CPSA provides that "a school employee who has reasonable cause to suspect . . . that a student coming before the school employee in the employee's professional or official capacity is a victim of serious bodily injury or sexual abuse or sexual exploitation by a school employee shall immediately contact the administrator" or law enforcement.   23 Pa. C.S.A. § 6352.  The statute provides that this is a criminal offense where the violation is done "willfully."  Id.  Courts that have addressed the application of the CPSA have held that "a failure to report is not criminal" unless defendants had "actual knowledge of prior acts" that led to "serious bodily injury or sexual abuse or sexual exploitation" of a student, and that defendants intentionally did not report this misconduct.  Pursel v. Parkland Sch. Dist., 70 Pa. D. & C.4th 129, 135 (Com. Pl. 2005); see also Jankowski, 2013 WL 5945782, at *12.

Here, the injury in question, and the injury the statute was designed to prevent, is the sexual assault committed by Sharkey.  Therefore, to establish negligence per se, Plaintiffs must allege that Defendants had cause to believe that M.S. was the victim of sexual battery while it was ongoing, intentionally failed to report the relationship, and this caused M.S. injury because the sexual abuse thereafter continued.  As discussed previously, the Court finds that the complaint lacks specific factual allegations tending to show the named Defendants had knowledge of the relationship prior to its cessation.  The complaint asserts that unnamed

teachers, STHS office staff, and the other assistant principals knew that M.S. was called into

Sharkey's office an inordinate amount of times and that unnamed "teachers at STHS became

aware that students were making vulgar statements and slurs about and to M.S." (Id. ¶¶ 133-37,

148.)  Taken as true, these vague allegations are still insufficient to allege that the named

Defendants had actual knowledge of the sexual relationship while it was ongoing and "willfully"

failed to report in violation of the CPSA.  See Fowler v. UPMC Shadyside, 578 F.3d 203, 210

(3d Cir. 2009) ("A plaintiff must set out 'sufficient factual matter' to show that the claim is

facially plausible.")  Although Plaintiff alleges that the relationship was eventually reported to

various Defendants, these reports are alleged to have come after the relationship ended, and the

failure to report to law enforcement at that time therefore did not proximately cause M.S.'s harm

and is not negligence per se.  See J.E.J, 692 A.2d at 585.  Accordingly, the Court finds Plaintiff

has not stated a claim for negligence per se and will dismiss the claim without prejudice.

### 4.      Negligent hiring against Kegerise and Lovelidge

Defendants move to dismiss Plaintiffs' state law negligent hiring claim against

Defendants Kegerise and Lovelidge in Count Eight.  An employer owes a duty "to exercise

reasonable care in selecting, supervising and controlling employees."  R.A. ex rel. N.A., 748

A.2d at 697.  The Supreme Court of Pennsylvania has held that, "[t]o fasten liability on an

employer[,] ... it must be shown that the employer knew or, in the exercise of ordinary care,

should have known of the necessity for exercising control of his employee."  Dempsey v. Walso

Bureau, Inc., 246 A.2d 418, 422 (Pa. 1968).  In other words, under Pennsylvania law, a plaintiff

seeking to recover on a negligent hiring theory must show: (1) employer defendant knew or

should have known of the propensity of the employee and (2) such employment creates a

situation in which a third party may be harmed.  Coath v. Jones, 277 419 A.2d 1249, 1250 (Pa. Super. Ct. 1980).

Although Plaintiff's complaint did not meet the strict standard required by the United States Supreme Court in Brown to give the single hiring decision a constitutional dimension imparting Section 1983 liability, the Court cannot say as a matter of law that Defendants' decision to hire Sharkey was not negligent under the facially lower standard[8] for negligent hiring under state law.  Although Sharkey's arrest for inducing a minor to purchase alcohol does not point toward the precise harm of sexual assault, it does indicate a history of targeting minors, and suggests that Defendants behaved negligently in that they should have known there was some risk in hiring him.  See Coath, 419 A.2d at 1250 ("[T]he defendant could be found negligent if Kehoe was known to have the inclination to assault women or if the defendant should have known that.").  Accordingly, because it is reasonable to infer from Plaintiffs' complaint that Superintendent Kegerise and Principal Lovelidge were responsible for hiring Sharkey, the Court finds that Plaintiff has stated a state law claim for negligent hiring against these Defendants.

### 5.    Individual immunity

Although the Court finds that Plaintiffs have stated a negligent hiring claim against Defendants Kegerise and Lovelidge, Defendants argue that they are immune from this and all state claims by the PPSTCA.  The PPSTCA extends immunity to employees of local agencies acting within the scope of their duties unless it falls into one of the eight enumerated categories of negligence, none of which Plaintiffs allege apply here.  However, the PPSTCA also strips an

---

[8]  Regarding Plaintiffs' Section 1983 claims, in contrast to the state law cause of action, they require allegations of "deliberate indifference," and a "a showing of simple or even heightened negligence will not suffice."  Brown, 520 U.S. at 407-412.

employee of immunity if he or she engages in conduct that is found to constitute "a crime, actual

fraud or willful misconduct."  42 Pa.C.S. § 8550.  Willful misconduct is synonymous with

intentional tort.  See Renk v. City of Pittsburgh, 641 A.2d 289, 291 (Pa. 1994) (citations

omitted).

      The Court finds that Plaintiffs have not alleged willful misconduct that would strip the

Defendants of their immunity.  First, although Plaintiffs have stated a claim for negligent hiring,

by definition, negligent acts do not include "acts or conduct which constitutes a crime, actual

fraud, actual malice or willful misconduct."  Odom v. Borough of Taylor, No. 05-0341, 2006

WL 3042974, at *11 (M.D. Pa. Oct. 24, 2006) (citing 42 Pa. C.S.A. § 8542(a)(2); Agresta v. City

of Phila., 694 F.Supp. 117, 123 (E.D. Pa. 1988)).

      Plaintiffs contend that immunity should be abrogated due to the Defendants' alleged

violation of the CPSA, but the Court has already found in its discussion of the negligence per se

count that Plaintiffs have not alleged a willful criminal violation of that statute.  Lastly, although

the Court found that Plaintiffs adequately alleged that Defendants acted with deliberate

indifference regarding Plaintiffs' harassment allegations under Title IX, deliberate indifference

"is a standard which falls short of intent to cause harm" and is not willful misconduct abrogating

immunity under the PPSTCA.  See Owens v. City of Phila., 6 F. Supp. 2d 373, 395 (E.D. Pa.

1998).

      Accordingly, although Plaintiffs have stated a negligent hiring claim, the Court finds that

the allegations in Plaintiffs' complaint do not suffice to abrogate the immunity granted to the

individual Defendants on that Count.  The Court will therefore dismiss the negligent hiring claim

without prejudice to an amended complaint wherein Plaintiffs may aver sufficient facts to

indicate that the Defendants are not qualified for immunity under the PPSTCA.

### 6. Punitive Damages

Defendants also move to dismiss Plaintiffs' claims for punitive damages.  (Doc. No. 14 at

90.)  Although Plaintiffs assert that punitive damages are available in a Section 1983 claim

against the individual Defendants and for intentional state law torts, the Court will dismiss those

claims without prejudice and, therefore, dismiss the associated punitive damages claims as well.

The only cause of action the Court will not dismiss is Plaintiffs' Title IX claim; however, courts

in this district do not allow punitive damages under Title IX.  See, e.g., E.N. v. Susquehanna

Twp. Sch. Dist., No. 09-1727, 2010 WL 4853700, at *21 (M.D. Pa. Nov. 23, 2010).

Accordingly, Plaintiffs' claims for punitive damages will be dismissed without prejudice.

## IV.   CONCLUSION

The Court will dismiss Plaintiffs' claims against the individually-named Defendants in

their official capacities with prejudice.  The Court will dismiss Plaintiffs' claims arising under 42

U.S.C. § 1983 and the United States Constitution without prejudice to Plaintiffs' filing an

amended complaint that corrects the defects identified in the foregoing memorandum.  The Court

will dismiss Plaintiffs' state law claims alleging negligent hiring, negligence per se and

intentional infliction of emotional distress against the Susquehanna Township School District

with prejudice as barred by the PPSTCA.  The Court will dismiss Plaintiffs' state law claims

alleging negligent hiring, negligence per se and intentional infliction of emotional distress

against the individually-named Defendants in their individual capacities without prejudice.  The

Court will not dismiss Plaintiffs' hostile educational environment claim under Title IX.  An

order consistent with this memorandum follows.